USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: May 4, 2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
:
VERRAGIO, LTD.,                                              :
                                                             :
                              Plaintiff,        :
                                                             :
                 -v-                                  :    16-cv-6931 (KBF)
                                                             :
S K DIAMONDS,                                                :    MEMORANDUM
                                                             :    OPINION & ORDER
                              Defendant.       :
                                                             :
------------------------------------------------------------ X

KATHERINE B. FORREST, District Judge:

      This suit arises from allegations that defendant SK Diamonds ("SK") marketed and sold fine jewelry that fringes upon plaintiff Verragio, Inc.'s ("Verragio's") registered copyrights and trademarks. (See Compl., ECF No. 1 at ¶¶ 11, 12, 14, 26, 27.) In addition to money damages, Verragio seeks injunctive relief under 15 U.S.C. § 1116 and 17 U.S.C. §§ 502-503, and attorneys' fees and costs under 15 U.S.C. § 1117 and 17 U.S.C. § 505.

      Before the Court is defendant SK's motion to dismiss for lack of jurisdiction and for improper venue. (ECF No. 24.) For the reasons set forth below, the Court finds by a preponderance of the evidence that it has personal jurisdiction over defendant and that venue is proper in this district. The motion to dismiss at ECF No. 24 is therefore DENIED.

    I.    PROCEDURAL AND FACTUAL BACKGROUND

      Plaintiff Verragio commenced this action on September 2, 2016, seeking

damages and injunctive relief for SK's alleged infringement of Verragio's intellectual property in jewelry designs.  (See Compl., ECF No. 1 ¶¶ 34-36, 51-56.)  On November 4, 2016, SK moved to dismiss under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(3).  (ECF Nos. 18, 24.)  Following the initial pretrial conference on November 7, 2016, the Court permitted limited jurisdictional discovery for the purpose of resolving defendant's motion.  (ECF No. 21.)  The motion became fully briefed on March 9, 2017.  (ECF No. 39.)

The following facts, alleged by Verragio, are construed in the light most favorable to the plaintiff for the purpose of this motion.  Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 918 F.2d 1039, 1043 (2d Cir. 1990).  Verragio, a jewelry manufacturer and vendor, is a New York corporation with its principal place of business in New York City.  (Compl., ECF No. 1 ¶ 3.)  SK, also a jewelry manufacturer and vendor, is a corporation with its principal place of business in Houston, Texas.  (Id. ¶ 4.)  Verragio's owner, Barry Nisguretsky, holds a federally registered copyright in what Verragio calls INS-7047D, an engagement ring design that he has licensed exclusively to Verragio and that Verragio sells as part of its "Insignia Collection."  (Id. ¶¶ 6, 10-12.)  Verragio itself owns a trademark registration for the "Verragio Crest" configuration of ring-design elements, which is present in each Insignia Collection ring.  (Id. ¶ 14.)  Verragio's complaint alleges, inter alia, that SK has advertised, manufactured, and sold rings that infringe upon these copyrights and trademarks, including in New York.  (Compl., ECF No. 1 ¶¶ 34-36, 51-56.)

In his declaration in support of the motion to dismiss, SK's owner, Sakait Kedia, states that SK has no retail outlet and no property in New York. (Kedia Decl., ECF No. 25 ¶¶ 5-7.) Kedia also states, inter alia, that SK has not "entered into transactions or agreements that contemplated conducting business in New York," that it has not "directed business to any New York entity or individual," that it has not "conducted, or been licensed to conduct, business in New York," and that it did not "deliver, or paid to be delivered, any of the allegedly infringing products to New York." (Id. ¶¶ 8, 13, 17, 18.)

Several statements in Kedia's declaration are contradicted by the record developed in jurisdictional discovery. SK admits to selling jewelry to seven independent New York jewelers with whom SK employee salespeople have communicated by phone, at trade shows, and in person by traveling to New York. (Gonda Decl., ECF No. 31-1 16:20-17:24; see also Def. Responses to Pl. Interrogatories at 4; ECF No. 31-1 at 34.) SK has hand-delivered jewelry to retailers at trade shows in New York, (Gonda Decl., ECF No. 31-1 23:15; id. at 42:19-43:7.) Indeed, Exhibit B to Kedia's own declaration shows the sale of an allegedly infringing ring to a customer in New York. (Kedia Decl., ECF No. 25 ¶ 2; Kedia Decl. Ex. B, ECF No. 25-2.) As part of its regular participation in New York trade shows, (Kedia Decl., ECF No. 25 ¶ 9), SK has signed contracts consenting to jurisdiction in New York and to application of New York law in actions arising from its participation in such trade shows. (See Kroll Decl. Ex. 5, ECF No. 31-1.)

The record developed in jurisdictional discovery also shows that SK has

3

shipped allegedly infringing rings to New York customers at New York addresses, (Gonda Decl. 10:3-9, ECF No. 31-1 at 5; id. at 45:21-25). In June 2016, SK took an order for the allegedly infringing ring from a New York retailer at a Las Vegas trade show, sent an invoice to the retailer at its New York address for the retailer's approval before completion of the sale, accepted payment for the ring made from New York, and shipped the allegedly infringing ring to New York. (See id. at 22:11-19; 35:1-38:8; 42:9-20; Def. Reply in Support of Motion to Dismiss, ECF No. 35 at 2-3.) In addition, SK specifically advertised the allegedly infringing ring to trade show attendees including, in an SK employee's estimation, 200 to 300 New York jewelry retailers. (Gonda Decl. 30:17-22.) Record evidence shows that these advertisements took two forms: first, an online advertisement accessible from New York that specifically promoting the allegedly infringing ring, and second, paper advertisements specifically featuring the allegedly infringing ring and intended for distribution to every trade show attendee. (Id. 57:18-58:22; 54:4-7; 28:4-21; see also Kroll Decl. Ex. 2.)

## II. LEGAL STANDARD

a. Personal Jurisdiction

Because the Court allowed the parties to conduct discovery on the jurisdictional issues, the Court must find that plaintiff has proved jurisdiction by a preponderance of the evidence. Landoil Res., 918 F.2d at 1043. This Court looks to the law of the forum state in determining whether it has statutory authority to exercise personal jurisdiction over defendants. Licci v. Lebanese Canadian Bank,

4

732 F.3d 161, 168 (2d Cir. 2013); Overseas Media, Inc. v. Skvortsov, 407 F.Supp.2d 563, 567 (S.D.N.Y. 2006). Additionally, this Court may only exercise personal jurisdiction over a foreign defendant if doing so is consistent with the due process protections of the U.S. Constitution. U.S. Const. amend. XIV; Pennoyer v. Neff, 95 U.S. 714, 733 (1877); Licci, 732 F.3d at 168. In deciding a motion under Rule 12(b)(2), a court may "consider affidavits and documents submitted by parties without converting the motion into one for summary judgment." ESI Inc. v. Coastal Corp., 61 F.Supp.2d 35, 50 n.54 (S.D.N.Y. 1999) (citing Laborers Local 17 Health & Ben. Fund v. Philip Morris, Inc., 26 F.Supp.2d 593, 604 (S.D.N.Y. 1998)).

      1.    New York's long-arm statute.

Under New York's long-arm statute, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163-64 (2d Cir. 2010) (quoting N.Y. C.P.L.R. 302(a)(1)).[1] "A single transaction in New York may permit a court to exercise personal jurisdiction over a defendant, "even though the defendant never enters New York, so long as the defendant's activities [in New York] were purposeful and there is a substantial relationship between the transaction and the claim asserted." Id. at 170. Activities such as operating a "highly interactive website offering [infringing goods] for sale to New York

---

[1] Plaintiff does not assert that the Court has general jurisdiction over defendant. Therefore, the Court does not consider whether jurisdiction exists pursuant to New York's general jurisdiction statute, C.P.L.R. § 301.

consumers," id. (quoting Best Van Lines, Inc. v. Walker, 490 F.3d 239, 252 (2d Cir. 2007)), or "participation in a [local] trade show" are "'sufficient to confer personal jurisdiction over a defendant' under the New York long-arm statute." Melissa & Doug, LLC v. LTD Commodities, LLC, No. 15-cv-8085, 2016 WL 4367975, at *4 (S.D.N.Y. Aug. 15, 2016) (quoting Millennium, L.P. v. Dakota Imaging, Inc., No. 03-cv-1838, 2003 WL 22940488, at *4 (S.D.N.Y. Dec. 15, 2003) (alteration in original)).

### 2. Due process

Once the Court has established its statutory authority to exercise jurisdiction over a defendant, it must determine "whether the district court's exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution." Licci, 732 F.3d at 168. In the due process inquiry, the Court considers first, whether "a defendant purposefully established minimum contacts within the forum State," and second, "whether the assertion of personal jurisdiction would comport with fair play and substantial justice"—that is, whether it would be reasonable. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476 (1985) (internal quotation marks omitted).

A single, isolated sale in the forum state is not sufficient to confer personal jurisdiction unless accompanied by "'something more' than simply placing 'a product in the stream of commerce,'" even if a defendant is aware that "'the stream may or will sweep the product in to the forum State." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 888-89 (2011) (quoting Asahi Metal Indus. Co. v. Sup. Court of Cal., 480 U.S. 102, 111, 112 (1987) (opinion of O'Connor, J.). "Something more" includes,

6

inter alia, "special state-related design, advertising, advice, marketing, or anything else," and evidence of "something more" may include evidence that a defendant "'purposefully avail[ed] itself of the privilege of conducting activities'" within the forum state. Id. at 889 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

In addition, the "unilateral activity of another party or a third person is not an appropriate consideration" in the determination of whether a defendant has minimum contacts with the forum state. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 417 (1984). Rather, the requisite minimum contacts must be "contacts that the 'defendant himself' creates with the forum State," and these contacts must be "with the forum State itself, not the defendant's contacts with persons who reside there." Walden v. Fiore, 134 S. Ct. 1115, 1122 (2014) (quoting Burger King, 471 U.S. at 475) (emphasis in original).

If a defendant has minimum contacts with the forum state, a court proceeds to determine whether the exercise of jurisdiction would be reasonable. The Second Circuit has recited a five-factor test for this "reasonableness" analysis: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared

interest of the states in furthering substantive social policies." Chloe, 616 F.3d at 164-65 (citing Asahi, 480 U.S. at 113-14).

"Ordinarily, . . . if jurisdiction is proper under the CPLR, due process will be satisfied because CPLR § 302 does not reach as far as the Constitution permits." Topps Co., Inc. v. Gerrit J. Verburg Co., 961 F.Supp 99, 90 (S.D.N.Y. 1997); Banco Ambrosiano, S.P.A. v. Artoc Bank & Trust Ltd., 464 N.E.2d 432, 435 (N.Y. 1984) ("Importantly, in setting forth certain categories of bases for long-arm jurisdiction, CPLR 302 does not go as far as is constitutionally permissible.").

  b. <u>Venue</u>

The copyright venue statute provides that "[c]ivil actions, suits, or proceedings arising under any Act of Congress relating to copyrights or exclusive rights in mask works or designs may be instituted in the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400(a). "[I]t is well-established that a defendant 'may be found' in any district in which he is subject to personal jurisdiction; thus, venue and jurisdiction are coextensive." Leroi, Inc. v. Csc3c, Inc., No. 15-cv-565, 2016 WL 4997228, at *8 (S.D.N.Y. Sept. 19, 2016) (citations omitted).

Venue is proper in trademark cases "in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). "[I]n trademark infringement claims, courts have held that venue may be proper in each jurisdiction where infringement is properly alleged to have occurred." Metropolitan Opera Ass'n v. Naxos of Am., Inc., No. 98-cv-7858,

8

2000 WL 987265, at *3 (S.D.N.Y. 2000) ((internal citation and quotation marks omitted). "At a minimum, the defendant must have targeted its marketing and advertising efforts at the district in question, or have actually sold its products there." Mattel, Inc. v. Adventure Apparel, No. 00-cv-4085, 2001 WL 286728, at *4 (S.D.N.Y. Mar. 22, 2001) (internal quotation marks omitted).

II. DISCUSSION

   a. Personal jurisdiction

      1. New York long-arm statute

The parties do not dispute that there was at least one sale of the allegedly infringing ring to a New York customer, and that the order was placed a trade show where SK purposefully advertised the allegedly infringing ring and that SK knew was attended by hundreds of New York retailers. The parties also do not dispute that the invoice used to close the transaction and, subsequently to payment, the ring itself were shipped to the retailer's New York address.

Under well-established caselaw, "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state," even if that person never enters the state. Chloe, 616 F.3d at 163-64. Courts have held that shipping an infringing item into New York to a New York customer is sufficient to satisfy C.P.L.R. § 302(a)(1). See, e.g., Hypnotic Hats, Ltd. v. Wintermantel Enters., LLC, 2016 WL 7451306, at *2 (S.D.N.Y. Dec. 27, 2016) ("Thus, a 'single act of shipping a [product] might well be sufficient, by itself, to

9

subject [a nondomiciliary] to the jurisdiction of a New York court under section 302(a)(1).'" (quoting Chloe, 616 F.3d at 170) (alterations in original)); Leroi, Inc. v. Csc3c, Inc., No. 15-cv-565, 2016 WL 4997228, at *5 (N.D.N.Y. Sept. 19, 2016) ("[T]he fact that Plaintiff has identified only one specific transaction potentially involving the [infringed design] is not dispositive because C.P.L.R. § 302(a)(1) "is a 'single act statute'[.]"); Baron Philippe de Rothschild, S.A. v. Paramount Distillers, Inc., 923 F.Supp. 433, 436 (S.D.N.Y. 1996) ("[D]efendants admit that they shipped the allegedly infringing goods to New York. Thus, those shipments were purposeful and substantially related to plaintiffs' claim of trademark infringement."). The sale of the allegedly infringing ring to a New York retailer, and the shipping of that ring to New York, is therefore a basis for personal jurisdiction under C.P.L.R. § 302(a)(1).

Additionally, there is a clear "articulable nexus between the business transacted and the cause of action sued upon" because the transaction was a sale of the allegedly infringing product. See McGowan v. Smith, 52 N.Y.2d 268, 272 (1981). Therefore, the SK's sale to a New York retailer, to whose New York address SK shipped both the transaction invoice and the allegedly infringing item, satisfies the test for personal jurisdiction under C.P.L.R. § 302(a)(1).

2. Due process

For the Court to properly exercise jurisdiction in this matter, plaintiff must also show that defendant has minimum contacts with the forum state from which the plaintiff's claims arise, and that the exercise of jurisdiction over defendant is reasonable such that it would not "offend traditional notions of fair play and

substantial justice." Int'l Shoe v. Washington, 326 U.S. 310, 316 (1945). These requirements are satisfied here.

First, the Court notes that because C.P.L.R. §§ 301 and 302 do not authorize jurisdiction to the full reach of the Due Process Clause, it follows that if personal jurisdiction is proper under the C.P.L.R., it is ordinarily proper under the Constitution. See Licci, 732 F.3d at 170 ("It would be unusual, indeed, if a defendant transacted business in New York and the claim asserted arose from that business activity within the meaning of section 302(a)(1), and yet, in connection with the same transaction of business, the defendant cannot be found to have purposefully availed itself of the privilege of doing business in the forum and [to have been able to] foresee being haled into court there." (internal quotation marks omitted)).

However, the Court concludes that personal jurisdiction is also proper under an independent constitutional analysis. Defendant did not simply send the allegedly infringing ring to the stream of commerce with the downstream result of it arriving in New York. Cf. Asahi, 480 U.S. at 103-04. Nor did defendant sell and deliver the ring to a customer in Nevada who, after the transaction was complete, independently brought the ring to New York. Cf. World-Wide Volkswagen, 444 U.S. at 298. Rather, there was "something more:" Defendant marketed the allegedly infringing ring on its website to trade show attendees, including hundreds of New York retailers; defendant sent an invoice necessary to close the sale of the ring to a New York retailer in New York; and defendant shipped the allegedly infringing ring

11

to New York following completion of the sale. (Gonda Decl. at 22:11-19; 42:9-20; 7:18-58:22; 54:4-7; 28:4-21; see also Kroll Decl. Ex. 2.; Def. Reply in Support of Motion to Dismiss, ECF No. 36 at 2-3); see Nicastro, 564 U.S. at 889. This purposeful availment of the privilege doing business in New York with a New York resident is sufficient to establish minimum contacts under the Due Process Clause. See Licci, 732 F.2d at 170 (citing Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 305 F.3d 120, 127 (2d Cir. 2002)).

Defendant cites Walden v. Fiore for the proposition that plaintiff cannot show minimum contacts because defendant's only contact with New York was "the defendant's contacts with persons who reside there." (Def. Mem. in Support of Motion to Dismiss, ECF No. 26 at 9 (quoting Walden, 134 S. Ct. at 1122).) But "the plaintiff [is not] the only link with the forum. Rather, it is defendant's conduct," including purposefully sending an invoice to New York, completing a sale of the allegedly infringing ring with a New York retailer, and thereafter shipping the allegedly infringing ring to the New York retailer, that "form[s] the necessary connection with the forum State." Walden, 134 S. Ct. at 1122. These contacts were not "random, fortuitous, or attenuated;" they were purposefully directed to a specific retailer in New York. Cf. Burger King, 471 U.S. at 476. Unlike the defendant in Walden, who "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" the forum state, defendant SK marketed the allegedly infringing ring to trade-show attendees—who it knew included New York retailers—on its website, sent an invoice for the ring to a New York retailer (who

12

completed the transaction for the ring from New York), and shipped the ring directly to New York. Walden, 134 S. Ct. at 1124.

Taking defendant's argument to its conclusion, defendant could attend trade shows nationwide, marketing its goods and making sales to residents of every state, sending invoices to and completing sales orders in every state, and shipping its goods to every state—yet be subject to personal jurisdiction only in Texas simply because it ships from Houston. That is not the law. Defendant's marketing of the allegedly infringing ring directly to New York residents in person and online; its completion of a sale of the allegedly infringing ring in New York City—including sending the invoice and shipping the allegedly infringing goods to a New York retailer at a New York address—together constitute transacting business under C.P.L.R. § 302(a) and purposeful availment under the Due Process Clause. Licci, 732 F.3d at 170.

Personal jurisdiction is also reasonable under the five-factor test from Asahi and Chloe. See 616 F.3d at 164-65 ("(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.") (citing Asahi, 480 U.S. at 113-14). Defendant asserts, without citing any facts in the record, that litigation would be burdensome in the Southern District of New York because it is allegedly smaller than Verragio and that it is located only in

13

Houston (despite admittedly doing business at trade shows nationwide). Even if these factual statements from defendant's brief were supported, they would be insufficient to make out a "compelling case" that litigation in this forum is unreasonably burdensome. See Burger King, 471 at 477 (A defendant "must present a compelling case" that the exercise of jurisdiction would be unreasonable once minimum contacts are established.) In addition, the record shows that defendant has repeatedly sent its representatives and agents to conduct business in New York, including meeting with clients and attending trade shows here. (Gonda Decl., ECF No. 31-1 16:24-17:24; see also Def. Responses to Pl. Interrogatories at 4; ECF No. 31-1 at 34.) The record also shows that defendant has consented to jurisdiction in New York in the past as a matter of course for actions arising from its attendance at trade shows, indicating that defendant does not perceive litigation in New York as insurmountably burdensome. (See Kroll Decl. Ex. 5, ECF No. 31-1.) Moreover, "New York has a significant interest in protecting copyright holders from the sale of infringing goods in New York." Editorial Music Latino Americana, S.A. v. Mar Int'l Records, Inc., 829 F.Supp. 62 (S.D.N.Y. 1993). Given these considerations and defendant's failure to provide the Court any significant basis to believe that litigation in this forum would be burdensome, the Court finds that the exercise of jurisdiction would not be unreasonable.

 b. Venue

The copyright venue provision states that venue is proper "where the defendant or his agent resides or may be found," 18 U.S.C. § 1400(a), and courts in

this district have concluded that a defendant "may be found" in any district in which the defendant is properly subject to personal jurisdiction. Leroi, 2016 WL 4997228, at *8; Editorial Musical, 829 F.Supp at 66 ("It is well-established that a defendant 'may be found' in any district in which he is subject to personal jurisdiction; thus, venue and jurisdiction are coextensive.") (citing Lipton v. The Nature Co., 781 F.Supp. 1032, 1035 (S.D.N.Y. 1992), Bus. Trends Analysis v. Freedonia Grp., Inc., 650 F.Supp. 1452, 1456 (S.D.N.Y. 1987)). As defendant is subject to personal jurisdiction in this district, venue is also proper in this district.

III. CONCLUSION

For the reasons set forth above, defendant's motion to dismiss for lack of personal jurisdiction and improper venue is DENIED. The parties are hereby directed to submit a proposed schedule for the resolution of this matter not later than **Friday, May 12, 2017**.

The Clerk of Court is directed to terminate the motion at ECF No. 24.

SO ORDERED.

Dated: New York, New York
May 4, 2017

_____
KATHERINE B. FORREST
United States District Judge